**GOODMAN v. GOODMAN.**

No. 12213.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 7, 1951.

Heath & Ratliff, Falfurrias, J. Hubert Lee, Austin, for appellant.

Mark M. Carter, Baytown, for appellee.

POPE, Justice.

This is an appeal from a decree of one district court changing the child custody decree of another district court.

On June 3, 1947, Josephine Goodman obtained a divorce from John Goodman in the 126th Judicial District Court of Travis County. That decree also made provision for the custody of the minor child born of the marriage. At that time the child was three years old and the father was in the United States Army. Custody was awarded the mother until the child reached the age of sixteen years, but provided that the father "may visit said child upon reasonable notice to plaintiff, at reasonable times and places."

During 1949, the mother and child permanently moved to Brooks County and on June 20, 1950, John Goodman, while on leave from the Army, filed a suit in the nature of habeas corpus to obtain part time custody of the child. This suit was filed in Brooks County and alleged that he enjoyed annual leave from the Army during each summer for thirty days, that he maintained a suitable home in Baytown, Texas, that his former wife would not permit his taking the child to Baytown for a visit while he was on leave, nor would she permit him to visit the child at any place other than Falfurrias and in her presence. He also alleged that the child was older; that he was now in a better position to look after the child, and that Mrs. Goodman had changed her residence. He alleged the terms of the former decree, that Mrs. Goodman narrowly construed its visitation privileges, and that he wanted "a modification of said decree and a judicial determination construing what is meant in said decree by reasonable times and places, and now desires that said decree be modified, fixing the custody of Jay Clark Goodman during the months of July and August, 1950." The prayer was for an award of custody during those months of 1950, and also "for each summer thereafter, until said child shall have attained it's sixteenth birthday."

Notice was promptly served on Mrs. Goodman commanding her to appear at 10:00 a. m. on June 30, 1950, to show cause why the child should not "during the months of July and August, 1950, (be) awarded and delivered into the custody and care of his father." In addition to this notice to appear on June 30th, a separate citation was served on Mrs. Goodman

commanding her to appear on the Monday following twenty days from service to answer plaintiff's petition, a copy of which accompanied the citation. Appearance day on this process was July 17, 1950.

Both Mr. and Mrs. Goodman, with their attorneys, appeared at the hearing conducted on June 30th and both offered testimony, at the conclusion of which the court entered its judgment and made findings of fact and conclusions of law. The judgment, among other things, recited that since the original divorce and custody decree, "material and substantial changes in the facts with respect to the custody, best interest and welfare" of the child had occurred, and it then ordered that the best interest and welfare of the child required that the child be awarded the father for a period of three weeks commencing in July and ending on the 26th of that month. The decree also made the additional and significant order, "that he shall have the custody of said child each regular succeeding summer hereafter, until the further order of the Court, for a period of three (3) weeks beginning the 1st day of July and terminating on or about six o'clock p. m. on July 22nd." The decree also defined specifically and clearly the hours for Mr. Goodman's visits on one day of each week for the other part of the year that the father did not have the child in his custody. This custody was ordered to be effective until the further order of the court.

 The evidence supports the finding of fact that both parents are persons of good moral character and fit persons to enjoy the custody of their son and that the child is normal and healthy. The court's findings of fact also recited that the mother had impeded the father's freedom to visit the child, as ordered by the District Court of Travis County, and that material and substantial changes in the circumstances and conditions affecting the life of the child had occurred since the original divorce and custody decree. These findings are supported by the evidence. The conclusions of law are short but state that the child "should be placed in the custody of his father, John M. Goodman, for three

weeks of each year, commencing on July 5th, 1950, and July 1st of each year thereafter, and that the mother, Josephine Goodman, should have the custody of such child for the remainder of each year."

Appellant by proper points complains of the judgment for the following reasons: (1) The evidence was insufficient to show new conditions such as would support a change in the original decree; (2) the decree of the Travis County District Court was res adjudicata; (3) appellant's appearance at the June 30th hearing was in response to a notice to appear for a limited purpose on an interlocutory hearing, but that a final decree was entered as to the permanent custody of the child at the temporary hearing.

Appellee by counter-points urges that (1) the court did not abuse its discretion based on the facts before it; (2) the decree of the District Court of Travis County was not res adjudicata, and in fact was not even a final decree, but like the decree of the Brooks County District Court is subject to change; (3) that in child custody cases trial judges should exercise broad, equitable powers and not permit "technical" rules to have controlling effect. Related to this counter-point is the additional argument that the appellant did not ask for a postponement of the June 30th hearing and may not now be heard to complain against the decree entered.

██ Venue for a suit seeking to render effective the exercise of rights granted by a decree may be different from a suit seeking changed custody by reason of new and different conditions. Quick v. Lindsay, Tex.Civ.App., 208 S.W.2d 910. No plea of privilege was filed in this suit, however, and the petition contained sufficient allegations for a new and independent suit fixing venue in Brooks County.

Without detailing the evidence, we overrule appellant's first point, since the unchallenged findings of fact show that on the basis of the facts before the court on June 30th there was sufficient evidence to support the orders made. Whether other and different evidence may have been offered at another time is discussed below.

■ The second point and counterpoint present interesting opposite extremes. Appellant here urges that the original Travis County decree was so final as to be res adjudicata. Appellee urges that neither the Travis County decree nor the Brooks County decree is final, but that each is an interlocutory order, even to the point that no appeal may be taken from the order. These views result from an improper definition of terms. A decree in child custody matters is final and res adjudicata in the sense that the facts upon which the decree was entered may not again be retried and relitigated. Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016. It is final only as to matters that were then before the court. Castleberry v. Castleberry, 134 Tex. 409, 135 S.W.2d 701; Murphey v. Walker, Tex.Civ.App., 209 S.W.2d 371; Lacy v. Lacy, Tex.Civ.App., 122 S.W.2d 1104; Stone v. Dickerson, Tex.Civ.App., 138 S.W.2d 200. But the law writes into custody judgments that their finality ends when and if conditions affecting the welfare of the child have materially changed. Goldsmith v. Salkey, 131 Tex. 139, 112 S.W.2d 165, 116 A.L.R. 1293.

■ The original decree of the Travis County District Court on its face showed that it was to stand from the date of entry as a full adjudication of the custody rights of the parents. Absent new allegations showing material changed conditions occurring after that decree, it would remain unchanged and in force. That is as final as a custody order may become. We have already stated that there was support in the evidence for the trial court's findings of changed conditions, and as to those new and different and additional facts the Travis County decree was not res adjudicata. However, in so holding we do not uphold the contention made by appellee that both the Travis and Brooks County decrees were only temporary or interlocutory orders. The Brooks County decree undertook to do two things. It first made suitable provision for the immediate matter of custody during the summer of 1950 while Mr. Goodman was home on leave. It next made a complete adjudication of the custody for every year in the future.

Those provisions for custody for all time in the future were not interlocutory but constituted a full rendition on the facts as they existed up to June 30th. The judgment purports to be final in the sense that it will continue unchanged in the absence of a showing of changed conditions after that date. Nor do the words "until the further order of the court" contained in the decree convert the order into a temporary order. Those words do not infer that any further hearings are either set or contemplated, but do infer that if and when allegations are made of new and different facts arising after the decree, the matter may be re-examined. While we do not deem it necessary to consider the bill of exception preserved by appellant's attorneys because the judgment speaks for itself, the bill does recite that it was the permanent and not a temporary order. We do not agree with the argument that the decree is temporary merely because new facts or new allegations, in a new proceeding may again open the matter of custody. On such reasoning there could never be an appeal from a custody order, and aggrieved persons would be at the mercy not only of the bad but even of the good.

But the heart of this appeal concerns the power of the trial court to render the kind of judgment from which there has been this appeal. The judgment was a final judgment permanently adjudicating custody. Appellant was served with two different notices. She was commanded to appear on June 30th and show cause why custody should not be granted her former husband during the summer of 1950. That was the limit of the claim made against her by the first notice. She was also served with ordinary process, ordering her to appear on July 17th. A copy of the petition was served with the citation and it related both to temporary orders and to permanent changes. Appellant was ordered to appear two times, once for a temporary hearing and again at a later date for a hearing on the permanent features of the case. A single hearing was conducted and this occurred on June 30th, at the conclusion of which all matters, both temporary and permanent, were decided. Stat-

ed otherwise, a final and permanent custody order was made upon petition and notice for a temporary hearing. This final judgment was rendered on June 30th, and appearance day for the final hearing was not until July 17th. We are now called upon to uphold this speedy trial by reason of the broad equity powers possessed by courts sitting in matters concerning the lives of children. It is urged that we are not bound by the usual "technical" rules of practice and procedure, but that we are charged with determining from all the facts and circumstances what is for the best interest of the child.

■■■■ We hold that the trial court committed reversible error for which this cause must be remanded for re-trial. We recognize that respectable authority has made broad utterances that a determination of the future welfare of a child should be unhampered by narrow technical rules. Williams v. Perry, Tex.Com.App., 58 S.W. 2d 31; Tunnell v. Reeves, Tex.Com.App., 35 S.W.2d 707; Felker v. Felker, Tex.Civ. App., 216 S.W.2d 669; Murphey v. Walker, Tex.Civ.App., 209 S.W.2d 371; Sawyer v. Bezner, Tex.Civ.App., 204 S.W.2d 19; Brillhart v. Brillhart, Tex.Civ.App., 176 S.W.2d 229; Fraley v. Martin, Tex.Civ. App., 168 S.W.2d 536. While we are in accord with the liberal interpretation of rules relating to children, we do not understand that any of these authorities hold that the due process clauses of the State of Texas and the United States are mere "technicalities" which are to be respected when property is at issue, but suspended when a child is the subject of controversy. In fact, the liberal objectives for the Rules of Civil Procedure as embodied in Rule 1 apply to all civil suits.

When we commence dispensing with rules of law and practice in the name of child welfare, we would do better to name specifically the right and the procedure that we deem fit for discard rather than to state broadly that we are to disregard technicalities. A technicality too frequently upon inspection turns out to be nothing more than a clear, certain, positive and unequivocal rule that stands in the way of the complaining party. It too frequently is a form of loose name-calling which should be carefully weighed, particularly when the alleged rule enjoys a respectable lineage associated with human freedom as we know it. The United States Constitution is a galaxy of legal technicalities. They have been collected and embodied in the supreme law of the land so they may be preserved from the zeal of persons who would justify the means by the end. Specifically, applied to child custody cases, shall we abolish the rule which requires that a petition be filed informing the adversary of the nature of his claim to a child? The Fraley case above, while voicing the phrase which deplores technical practice, by its reversal of the case, is authority that a citation must be issued and served on a defendant before a permanent judgment may be made in a custody case. The other cases concern the sufficiency of pleadings only. Would we dispense with the requirement that the adversary be told the time and place of the hearing, or would we permit the judge's secretary rather than the judge to hear the case, or would we permit the judgment to be left to memory rather than be reduced to writing and recorded on the judgment roll, or would we deprive an aggrieved party of an appeal, or permit a judgment to be rendered without evidence? Just which one of these procedural requirements and what part of due process is it that we are to brand as technicalities which are dispensable in the case of children?

■■■ It is argued here that certain rules should be ignored and that the welfare of the child is the only concern of the court. How can that welfare be determined when full competent evidence is not heard, or when the hearing itself is called off? On the basis of the evidence presented, we think the trial court ruled correctly and wisely. But it is common knowledge that the evidence presented on temporary matters is often incomplete. Frequently parties do not even appear at the preliminary hearings. The full evidence is presented and the real trial occurs at the final hearing. We do not know whether appellant

646

could present more and different evidence, but she had the right to present it at the time and place the official court process told her to appear. It may be that the evidence would be so overwhelming as to show that the welfare of the child is not served by the present order. She complained below and here that she did not present her full evidence because she was not given an opportunity to do so. Then how are we to know whether the welfare of the child is served? We cannot know, because a technical rule has been ignored. Only through following the rules can we discover what is for the best interest of the child. The purpose of the liberality expressed in the opinions in children matters is not to deprive them of rights but to make them more abundantly available to them. Any practice which closes the mouth of persons who may have significant and convincing evidence as to children's welfare or deprives people of their opportunity to make full disclosure of relevant, material and competent evidence is not a liberal, non-technical application of the broad equity powers of the court. The liberality is on the side which emasculates the right to a full hearing. It is a deprivation of valuable rights—"technical" rights, if the word be preferred. Such practice not only destroys the law but endangers the rights and privileges inherent in the custody and welfare of children.

■ A permanent order may not be made upon a hearing for a temporary order unless the adversary submits to such procedure, which is not the case before us. The notice to appear for a temporary hearing will not support the final judgment. Until the full hearing is conducted the rights and welfare of this child cannot be known. An adjudication short of a full hearing is not for the best welfare of the child.

■ Appellee also contends that the judgment should be upheld because the appellant did not move for a postponement of the June 30th hearing. There was no occasion for such a motion. Appellant was ready for the type of hearing set for that day, and objected to a final hearing and to the judgment which purported to be a final judgment. In obedience to process, appellant appeared on June 30th, but that in no way imposed the burden upon her to request a postponement of a future trial not then before the court.

■ We think the trial court had the power to try and hear the matter of temporary custody. Appellant appeared, participated, and yielded to that hearing, and appellee, Mr. Goodman, obtained and enjoyed the custody of the child by force of the trial court's order. That phase of the cause is now moot. But those portions of the order undertaking to adjudicate the permanent custody of the child went beyond the scope of the June 30th hearing. Since the final hearing has not yet been conducted, the judgment permanently adjudicating custody must be reversed. Hogue v. Coit, Tex.Civ.App., 196 S.W.2d 346.

The judgment is reversed and the cause remanded.