Dean CLUCK, Appellant,

v.

Anna Mae Cluck PARCHMAN, Appellee.

No. 6683.

Court of Civil Appeals of Texas.

Amarillo.

June 3, 1957.

Sanders, Scott, Saunders & Smith, Amarillo, for appellant.

Wright & Waters, Lubbock, for appellee.

NORTHCUTT, Justice.

Appellant, Dean Cluck, and appellee, Anna Mae Cluck Parchman, were formerly man and wife and while they were living together as man and wife they adopted the little girl here in question. On February 22, 1952, Anna Mae Cluck was granted a divorce from Dean Cluck and in that judgment the care, custody and control of Deanna Mae Cluck, the minor here in question who was eight years of age, was awarded to Anna Mae Cluck with the right of Dean Cluck to visit said minor at reasonable hours and times but without any authority to take the child from the custody of Anna Mae Cluck without her consent. In April 1952, Dean Cluck married his present wife. In May 1954, Anna Mae Cluck married her present husband.

On September 1, 1956, Dean Cluck filed this suit in Sherman County, Texas, seeking limited custody of Deanna Mae Cluck thereby seeking to have changed the judgment entered on February 22, 1952. Appellee filed a plea of privilege and the case was transferred to Lubbock County, Texas. Upon a trial of the case the trial court refused Dean Cluck any relief and refused to change in any manner the judgment entered on February 22, 1952. From this judgment, appellant perfected this appeal and presented his appeal upon three points of error as follows:

"First Point

"The Trial Court abused its discretion in refusing to award appellant limited custody of his adopted daughter for two separate periods of two weeks each during the summer months and alternate Christmas Holidays and alternate Thanksgiving Holidays.

"Second Point

"There is no competent evidence of sufficient probative force to support the Trial Court's finding that the best interest of the child required that full time custody be awarded the appellee.

"Third Point

"The finding of the Trial Court that full time custody of the child should be awarded to the appellee is against the great and overwhelming preponderance of the evidence."

We think the proper procedure and conditions is well stated in the case of Pearson v. Pearson, Tex.Civ.App., 195 S.W.2d 188, at page 193 where it is stated:

"In the case at bar the trial judge undertook to modify the judgment of 1942 as to the custody of the children. This action could be based only on changed conditions arising since February, 1944, because on that date the custody of these children had again been adjudicated. The trial judge did not find any changed conditions and when the matter was called to his attention in a specially requested finding he persisted in not so finding. Apparently the trial judge was of the opinion that he had to determine but one issue, that of the best interests of the minor children. It is true that in modifying a custody judgment the trial court should be governed by what will be to the best interest and welfare of the minor children, but it is equally true that such modification must be based upon changed conditions. Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946, 75 S.W. 368, 97 Am.St.Rep. 928; Greenlaw v. Dilworth, Tex.Com.App.,

299 S.W. 875; Keith v. Keith, Tex. Civ.App., 286 S.W. 534; Oldham v. Oldham, Tex.Civ.App., 135 S.W.2d 564; Kesler v. McGuire, Tex.Civ. App., 109 S.W.2d 1115; Futch v. Futch, Tex.Civ.App., 299 S.W. 289.

"Frequent hearings as to the custody of minor children of divorced parents should be frowned upon by courts and are not to be encouraged. A judgment as to such custody is res judicata as to the best interests of the children and such judgment should not be modified except upon a showing of changed conditions since the judgment, requiring, in the best interests of such children, that the custody be changed. The burden of proof is upon the party seeking such change to allege, offer proof and secure an affirmative finding from the trier of facts that conditions have so changed since the prior adjudication as to require a change of custody."

The main change of conditions relied upon by appellant seems to be the hardship upon him to go to Lubbock to see the child, as appellee has moved to Lubbock since the divorce was granted; the wealth of appellant and his parents and the possibility of the child drifting from loving them and thereby losing what she probably would receive from her adopted father and grandparents; the contention that Deanna has already begun the process of losing her affection for her adopted father, and that appellee is not doing anything to keep that from happening but that appellee wants appellant to permit Mr. Parchman to adopt Deanna.

The real harm was done to an innocent and helpless child on February 22, 1952, when the divorce was granted. There is nothing in this record to show that the present home of each of the parents is not a fit and proper place for Deanna. Appellant has always had the right and was welcome to visit Deanna as provided for in the original judgment granting appellee the care and custody of said child with the right of appellant to visitation.

The trial court saw the parties and heard them testify and we cannot say the court abused its discretion. Appellant and appellee are the ones that broke faith with the child and set aside their agreement with it when they broke up the home into which it was adopted and we can only consider what is for the best interest of the child. Homes in poverty are sometimes better than homes of wealth.

We cannot better express our holding in this case than was expressed in the case of Martin v. Martin, Tex.Civ.App., 132 S.W.2d 426, at page 428, where it is stated:

"In our opinion, the original decree awarding the child part time to each of the parents was unwise. Certainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C.J. p. 344, Sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex.Civ.App., 37 S.W.2d 241."

Judgment of the trial court is affirmed.