**Louis C. LEITHOLD, Petitioner,**

v.

**Thyra Nichols PLASS and Gilbert
Norman Plass, Respondents.**

No. A–11509.

Supreme Court of Texas.

March 1, 1967.

Rehearing Denied April 26, 1967.

———◆———

Turner, Hitchins, McInerney, Webb & Hartnett, J. Glenn Turner, Jr., Dallas, for petitioner.

William A. McKenzie, Conway R. Lammers, Dallas, for respondents.

STEAKLEY, Justice.

In 1959, petitioner, Louis C. Leithold, and respondent, Thyra N. Plass, while husband and wife, adopted a minor child, Gordon Marc Leithold. They were divorced by decree of an Arizona court in 1962. Respondent was awarded custody of the child and petitioner was accorded certain visitation rights.[1] Thereafter, respondent married Gilbert Norman Plass and moved to Dallas, Texas, in 1963 where she, her husband and the adopted child now reside. Petitioner now lives in California. In 1965, he instituted this suit against his former wife and her present husband in the Juvenile Court of Dallas County, Texas. The petition was styled "Application for Modification of Visitation and Custody" and sought substantial modifications of the Arizona decree upon allegations of changed conditions and circumstances. After hearing the Dallas court modified the Arizona decree with respect to Petitioner's visitation rights as follows:

"It is therefore, ordered, adjudged and decreed that the Plaintiff Louis C. Leithold shall have visitation with his minor

1. "It is further ordered that the permanent care, custody and control of the minor child of the parties, Marc Leithold, is awarded to the plaintiff (Thyra P. Leithold) with visitation rights in the defendant (Louis C. Leithold) as follows:

\* \* \* \* \*

"2. At all times that Marc is outside the limits of the State of Arizona, which privilege shall be the plaintiff's, she shall notify the defendant of her plans to leave the State at least five (5) days before she departs. Whether Marc is within or without the State of Arizona, plaintiff shall keep the defendant notified of Marc's address by written notice to defendant's attorney, John B. Marron. During her absence from Arizona, the defendant shall have the privilege of visitations with Marc, without the supervision, following or interference of the plaintiff, or her friends, agents or employees upon five (5) days' written notice prior to the date selected by the defendant for such a visitation. The defendant's rights of visitation shall be between the hours of 9:30 A.M. and 4:00 P.M. on any one day of each week selected by the defendant by written notice as aforementioned. In lieu of such one-day visitation during any week, the defendant shall have from 9:30 A.M. to 4:00 P.M. on each day the right to a visitation on two consecutive days followed by a subsequent visitation of two consecutive days of like hours, provided the two period of consecutive day visitations are separated by a 24-hour period free of visitation. Such a series of two (2) two-day consecutive visitations may not occur, however, more than once in any consecutive 90-day period. Provided, however, that during the balance of such a consecutive 90-day period the defendant shall be allowed his normal weekly one-day visitations, except that after the last visitation of two (2) consecutive day visitations there shall be no visitation for the succeeding six (6) days. All visitations under this provision shall be within the city limits of the City of Pekin, Illinois, so long as the residence of the plaintiff is in the Town of Green Valley, Illinois, or in transit between the Town of Green Valley and the City of Pekin."

son, Gordon Marc Leithold, in his home in Malibu, California, from September 2 to September 12, 1965, and for a two-week period of each year hereafter commencing with the year 1966. Defendants are ordered to deliver up said child to the Plaintiff on the date each period of visitation commences hereunder. Plaintiff shall pick up said child in Dallas and return him at the close of such visitation."

Petitioner was required to post a $500.00 bond conditioned upon his returning the child to the Dallas Court at the close of the visitation periods. Only respondent appealed from the judgment.

The court of civil appeals was of the view that the judgment of the trial court modified the Arizona decree with respect to custody of the child, rather than visitation, and held that petitioner failed to show a change of conditions that would authorize a modification of the custody provisions of the prior decree. The court expressed the further opinion that the trial court "under this record could have undoubtedly entered a true visitation order" and remanded the case for the stated reason that in its opinion the trial below was upon an erroneous theory.[2]

 It is clear to us that the judgment of the trial court modified the Arizona decree with respect only to the visitation rights of petitioner and that custody of the child as awarded by the Arizona court was unaffected. There being evidence of a change of conditions sufficient to support such order, we reverse the judgment of the court of civil appeals and affirm that of the trial court.

 Custody of a child connotes the right to establish the child's domicile and includes the elements of immediate and direct care and control of the child, together with provision for its needs. See

Glasgow v. Hurley, 333 S.W.2d 658 (Tex. Civ.App.—Dallas 1960, no writ); Quick v. Lindsay, 208 S.W.2d 910 (Tex.Civ.App.—Galveston 1948, no writ); McFadden v. McFadden, 206 Or. 253, 292 P.2d 795 (1956); Selby v. Selby, Ohio App., 69 Ohio Law Abst. 257, 124 N.E.2d 772 (1952); Burge v. City and County of San Francisco, 41 Cal.2d 608, 262 P.2d 6 (1953); and In re Parks' Petition, 262 Minn. 319, 114 N.W.2d 667 (1962). These rights inherent in a custody status are not held by one enjoying visitation rights as provided in the custody decree.

This is well-illustrated here. The Arizona decree ordered that the "permanent care, custody and control of the minor child of the parties, Marc Leithold, is awarded to the plaintiff [respondent here] with visitation rights in the defendant [petitioner here] as follows, etc." The decree of the trial court in the instant proceeding did not purport to disturb this existing and permanent custody status. The judgment explicitly speaks in terms of "visitation * * * from September 2 to September 12, 1965, and for a two-week period of each year hereafter commencing with the year 1966."

Respondent is quite forthright in presenting her position and the issue before us. In her *Supplemental Brief to Petitioner's Application for Writ of Error*, respondent urges the proposition that the visitation decree of the trial court did not conform to Petitioner's pleadings for which reason "it is fundamentally erroneous and void," and summarizes her position as follows: "In the instant case the Trial Court entered a judgment based on visitation not custody, and it therefore remains the contention of Respondent that the order entered by the Trial Court disregarded completely the pleadings of Petitioner and entered a judgment granting visitation privileges, which privileges were not even pled in the original petition."

2. The CCA directed that its opinion be not published. See Rule 452, Texas Rules of Civil Procedure.

As we have previously noted, Petitioner in his pleadings sought a modification of the Arizona decree with respect to "custody and control" of the child and specifically prayed:

"WHEREFORE, premises considered, Plaintiff prays that Defendants Thyra Nichols Plass and Gilbert Norman Plass be cited to appear herein and upon final hearing hereof this Court grant the following relief:

"1. That the aforesaid Judgment and Decree be modified so that Plaintiff be given custody and control of Gordon Marc Leithold from June 15 to September 1 of each year hereafter commencing with the year 1965, and during such period of each year Plaintiff shall have the right to take said child to his home in Malibu, California;

\* \* \*"

Respondent would have us hold that such a pleading and prayer will not support a judgment for lesser relief in the nature of modified visitation rights with permanent custody as previously decreed remaining unaffected. To the contrary, we are of the view that a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child. The courts are given wide discretion in such proceedings. Ex Parte Eaton, 151 Tex. 581, 252 S.W.2d 557 (1952); Furrer v. Furrer, 267 S.W.2d 226, (Tex.Civ.App. —Austin 1954, no writ) Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children. Conley v. St. Jacques, 110 S.W.2d 1238, 1242 (Tex.Civ. App.—Amarillo 1937, writ dism'd); Williams v. Guynes, 97 S.W.2d 988 (Tex.Civ. App.—El Paso 1936, no writ). It is beside the point that in the instant proceeding the trial court, whether erroneously or not, construed the pleadings of petitioner

as seeking only a modification of visitation rights; the point is that once the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence.

Here the trial court has done no more than modify the existing visitation privileges of petitioner and the validity of its judgment in such respect is to be tested on the assumption that the court found every disputed fact in support of its judgment. Rules 296–299, Tex.R.Civ.P.; Construction & G. L. Union, etc. v. Stephenson, 148 Tex. 434, 225 S.W.2d 958 (1950). All necessary fact findings are implied. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1951). It is unnecessary for us to review the competent evidence of a change of conditions since the entry of the Arizona decree which rendered its visitation provisions unworkable and inappropriate The court of civil appeals recognized that the record amply supports "a true visitation order" but under its view of the case ruled there was no evidence of probative force to support an implied finding of material changes supportive of a change of custody. As indicated above, respondent does not argue there is no evidence to support the trial court decree if considered as modifying visitation rights only; nor did respondent assert by point of error in the court of civil appeals that the judgment of the trial court was so against the weight and preponderance of the evidence as to show an abuse of discretion. Rather, it is respondent's basic position that the trial below was limited to a question of custody by virtue of petitioner's pleadings; that the order was one modifying custody and as such was without support in the evidence. But our view is otherwise, and we hold that the pleadings of petitioner support the modification of the visitation provisions of the Arizona decree and that such was the

effect of the judgment of the trial court. It is also our view that the visitation order of the trial court did not, as urged by respondent, provide for a divided custody, in the sense of the cited case of Martin v. Martin, 132 S.W.2d 426 (Tex.Civ.App.— Waco 1939, no writ).

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

SMITH, NORVELL and HAMILTON, JJ., dissent.

NORVELL, Justice (dissenting).

This Court, the Court of Civil Appeals and, seemingly, the trial court have turned this case upon a distinction between "visitation rights" and "custody rights". In my opinion, this distinction is elusive at best and wholly immaterial to the true issue in the case which is the best interest of the child [1]. There is a well recognized distinction often encountered in cases involving the custody of children or the right to visit them which is clearly pointed out in our venue cases. In Leonard v. Leonard, 358 S.W.2d 721 (Tex.Civ.App.1962, no writ), the Amarillo Court of Civil Appeals said:

"Appellee takes the position that this suit is one to enforce the original divorce judgment, and that the District Court of Bailey County is the only Court that can enforce its judgment. To support this contention appellee principally relies on Ex Parte Gonzalez, 111 Tex. 399, 238 S.W. 635, and Carlson v. Johnson (Tex.Civ.App.) 327 S.W.2d 704 (no writ history). These cases do hold that the Court granting the divorce is the

1. The right of visitation is generally equated with the parent's right of access to his child. 27B C.J.S. Divorce § 312, p. 477. In Corpus Juris Secundum, it is also said that, "A decree which merely permits visitation does not authorize the visiting parent to transport the child away from its home". 27B C.J.S. Divorce § 312, p. 483, and also that it has been held "that the right of visitation should not be extended to a point where it becomes a divided custody or the equivalent thereof". In Patrick v. Patrick, 17 Wis.2d 434, 117 N.W.2d 256 (1962), the Wisconsin Supreme Court departed from the usual concept of the right of visitation and for the purposes of the particular case adopted a different classification. That Court said:

"Ruth's (the wife's) counsel argues that the judgment provides for dual custody (sometimes referred to as divided, or split custody) even though it specifically refers to James' (the husband's) right as 'visitation.' In the most restricted sense, a parent's right to visit his child while in the custody of another, means a right of access to the child. * * *

"When custody has been awarded to one parent or a third party, and the other parent is awarded the right, for the purpose of visitation, to remove the child from the immediate care of the one having custody, the parent who exercises such right obtains a measure of

authority over the child which would not be involved in mere access to it. In the nature of things the parent who removes the child and keeps it during a visit has an obligation to care for its immediate welfare and safety, and must control the child so far as is necessary to fulfill his obligation. His authority and obligation are not, however, equivalent to the authority and obligations of the one to whom the court has awarded custody.

" '* * * "Custody", in the sense we use it connotes, among other things, the right of the legal custodian to establish the legal domicile for the child, whereas such right does not abide with the parent who enjoys only the occasional right of visitation, i. e., the right to visit the child wherever it is, at certain time, or to have the child visit the parent for stipulated periods. * * *' [McFadden v. McFadden (1956), 206 Or. 253, 292 P.2d 795, 799]

" 'Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings, Civ.Code, § 197, and the right to direct his activities and make decisions regarding his care and control, education, health, and religion.' [Burge v. City and County of San Francisco (1953), 41 Cal.2d 608, 262 P.2d 6, 12]"

only Court which can properly hear the contempt motion. However, it is equally well settled that venue in actions for change of custody of minors lies in the county of the residence of the person having legal custody. Lakey v. McCarroll, 134 Tex. 191, 134 S.W.2d 1016; Ellington v. Floyd (Tex.Civ.App.) 255 S.W.2d 948 (no writ history); Taylor v. Taylor (Tex.Civ.App.) 348 S.W.2d 226 (no writ history). It is therefore apparent this case must turn on the question of what is the true nature of the case as viewed from appellee's motion and the judgment entered thereon. If the case is one to enforce the original divorce judgment by contempt, venue is properly in Bailey County. On the other hand, if the case is one to attempt to relitigate and readjudicate some feature of the custody of the child, it comes under the holding of Lakey v. McCarroll, supra, and venue would lie in Lubbock County".

See also, Nemec v. Degelia, 285 S.W.2d 411 (Tex.Civ.App.1955, no writ), Goodman v. Goodman, 236 S.W.2d 641 (Tex.Civ.App. 1951, no writ), Quick v. Lindsay, 208 S.W. 2d 910 (Tex.Civ.App.1948, no writ).

I would say that for a plaintiff to prevail in a suit which involved a change in the provisions of a decree as distinguished from one *to enforce the provisions of a decree* as written must show a change in conditions since the entry of the first decree in order to escape the bar of res judicata. For example, in this case, the original decree was entered by the Supreme Court of Arizona. If no change of conditions had taken place since the entry of that decree, a Texas court would be precluded from modifying such decree by the full faith and credit clause of the Constitution of the United States. A change of conditions being essential to effect a modification of the decree, why confuse the issue by attemping to draw a distinction between visitation rights and custody rights? Yet, the trial judge seems to have proceeded upon the theory that he could substitute

a two week period of visitation in California for a number of single day visits in Arizona or Illinois under some different rule or standard if visitation rights only as distinguished from custody rights were at issue. And, despite the pleadings of the parties, he insisted that he was trying a "visitation" case and not one involving custody. However, the decree entered reduced the custody period of Mrs. Plass from 52 weeks to 50 weeks. And here we might inquire, when would visitation become custody—in a period of two, twenty-two or forty-two weeks?

To me, this case is what is generally referred to as a split custody case. Most courts that have been called upon to decide cases of this character place no emphasis upon a distinction between custody and visitation. The distinction, if any there be, has no place in the problem. Under certain conditions where the welfare of the child is involved, the privilege of access to the child may be denied. "This privilege (of visitation) must yield to the good of the child, and may be denied to either, or both, parents where the best interests of the child will be served thereby". 27B C.J.S. Divorce § 312, p. 480. The welfare of the child should have been the controlling criterion of the trial court's decision, and not a distinction between visitation and custody rights. I cannot say with confidence that said trial court applied the correct standard or policy in rendering its judgment. It is argued most forcibly that this is not a case for divided custody, but one in which the petitioner should be denied all access to the child.

The minor here is an adopted child. The feeling between the adoptive parents, the contending parties here, is extreme in its bitterness. I shall not elaborate as to details. I would like to feel certain that the trial judge exercised his best judgment without reference to spurious and immaterial distinctions.

The argument that the principle of Martin v. Martin, 132 S.W.2d 426 (Tex.Civ.

App.1939, no writ),[2] has no application to this case is wholly untenable. By referring to a two week sojourn in California as a "visitation" does not avoid the evil that is discussed in Martin v. Martin. The child is being "hawked about from one parent to the other". "Putting a saddle on a duck does not make it a horse". Smith v. Morgan, 235 S.W.2d 938, l. c. 942 (Tex.Civ.App.1950, wr. dis.). In McDermott v. McDermott, 192 Minn. 32, 255 N.W. 247 (1934), the Supreme Court of Minnesota applied the same reasoning as that set forth in Martin v. Martin in a case wherein the wife had been awarded a divorce and custody of a minor child. Subsequently, the custody decree was modified over the mother's objection and the father was allowed to have the child for one week each month. The Supreme Court of Minnesota reversed the modifying decree and in the course of its opinion said:

"There should be here an end to the disturbances of this child and mother by the shifting of the child back and forth between the two homes, and an end to repeated motions and court proceedings in reference to the child's custody. So long as the mother is able to and does properly care for the child, she should be left in undisturbed custody."

In the recent case of Paynter v. Janca, 331 S.W.2d 814 (Tex.Civ.App.1960, no writ), the San Antonio Court of Civil Appeals had before it a situation similar to that disclosed by the record here in that the divorced parents lived in different states. The court said:

"Appellee argues that because his visiting privileges will necessarily be hampered on account of appellant's present residence in Norfolk, Virginia, the divided custody is justified. We overrule this contention. Judge Alexander in

Martin v. Martin, Tex.Civ.App., 132 S. W.2d 426, 428, the leading and most often cited case concerning divided custody of children, said:

" 'In our opinion, the original decree awarding the child part time to each of the parents was unwise. Certainly, no child could grow up normally when it is hawked about from one parent to the other with the embarrassing scene of changing homes at least twice each year. Such decrees are usually prompted by a laudable desire to avoid injuring the feelings of the parents, but the net result is a permanent injury to the child without any substantial benefit to the parents. In addition to the lack of stability in his surroundings, the child is constantly reminded that he is the center of a parental quarrel. It is readily apparent that such practices are calculated to arouse serious emotional conflicts in the mind of the child and are not conducive to good citizenship. Moreover, the parents are continuously pitted against each other in the unenviable contest of undermining the child's love for the other parent. Each parent is afraid to exercise any sort of discipline for fear of losing out in the contest. As a result, the child is reared without parental control. Such decrees by which the child is awarded part time to each of the parents have been condemned by numerous decisions. 19 C.J. p. 344, sec. 797, and authorities cited in Note 27; Swift v. Swift, Tex. Civ.App., 37 S.W.2d 241.'

"This statement of the rule has consistently been followed: Carter v. Carter, Tex.Civ.App., 318 S.W.2d 471; Alexander v. Alexander, Tex.Civ.App., 309 S.W.2d 886; Cluck v. Parchman, Tex. Civ.App., 303 S.W.2d 526; Bartlett v. Bartlett, Tex.Civ.App., 293 S.W.2d 508; Milim v. Mayfield, Tex.Civ.App., 285 S.

2. Martin v. Martin must be considered a leading case in Texas. It has been cited with approval some thirty times by the Texas appellate courts. See also, Annotation, 92 A.L.R.2d 695.

It might be remarked here that if the classification set forth in the Wisconsin case of Patrick v. Patrick, mentioned in the first footnote, be accepted, no difference in ruling or principle is suggested.

W.2d 852; Tedder v. Bloyd, Tex.Civ. App., 283 S.W.2d 409; Bronner v. Bronner, Tex.Civ.App., 278 S.W.2d 530; Anderson v. Martin, Tex.Civ.App., 257 S.W. 2d 347; Byrd v. Byrd, Tex.Civ.App., 195 S.W.2d 822. In our opinion, the rule is particularly applicable where the parents reside in distant states."

Can it reasonably be said that a child's mind may escape the feelings and expressions of ill will and bad feeling with their consequent emotional disturbance by designating the adoptive father's two week period of possession of the child as a "visitation" rather than a "custody" right? The controlling issue in this case—the best interest of the child—should not be "named" away. The trial judge should determine the issue without reference to how the father's two week possession of the child may be classified.[3]

I would affirm the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause. (There is no prayer for rendition of judgment for respondents.) Upon retrial, however, all issues made by the pleadings should be tried and the case should not be arbitrarily limited to an issue of so-called "visitation rights" and the paramount issue of the welfare of the child should be determined without regard to the elusive distinction between "visitation" and "custody" rights.

I respectfully dissent from the order reversing the judgment of the Court of Civil Appeals and affirming that of the trial court.

SMITH and HAMILTON, JJ., join in this dissent.

3. Under the Arizona decree, Mrs. Plass received custody of the minor subject to the rigidly regulated privilege of Louis C. Leithold to visit the child at the place of residence of the adoptive mother. When this privilege is changed so as to allow Leithold to take the child out of the State of Texas where the mother now resides to the State of California for a two week period, a substantial change was effected in the terms of the original decree rendered by the Arizona court and it makes no difference in principle whether this change is called a change in visitation rights or a change of custody.