**Elaine EDDINS et vir, Appellants,**

**v.**

**Larry TARVIN, Appellee.**

**No. 370.**

Court of Civil Appeals of Texas.

Tyler.

May 30, 1968.

Rehearing Denied June 27, 1968.

Sturgeon, Maguire & Sturgeon, Ben L. Sturgeon, Pampa, for appellants.

Harold L. Comer, Pampa, for appellee.

SELLERS, Justice.

The appellant and appellee were divorced in the District Court of El Paso, Texas, on August 29, 1966. At the time of the divorce, they had one child, a girl about 1½ years of age. In the divorce judgment, the care and custody of this child was given to the mother, with the following provision for visitation rights to the father:

"* * * and the Defendant is hereby given the right to visit said child at any reasonable and appropriate time after first making agreeable arrangements with the plaintiff for such visits."

Thereafter appellant, Elaine Eddins, moved to Pampa, Texas, where her parents live and the parents of appellee also live. Elaine Eddins was married to Jack Eddins and they established a home in Pampa, and the undisputed evidence in this case is that the child has a good home where she is properly cared for and is carried to church every Sunday with appellants.

Appellee remained in El Paso after the divorce where he was a professional golfer. From El Paso he went to Florida where he pursued his profession as a golfer and did not return to Pampa until June or July, 1967. This present suit was filed on August 2, 1967. In appellee's petition, he specifically alleges that he does not intend to disturb the custody of the child, but only seeks to have the court define his visitation rights. The petition seeks to have the visitation rights defined so as to turn the child over to him on Saturday at 10 o'clock and remain with him until Sunday afternoon at 5 o'clock P. M. the first and third weekends of every month.

The appellant answered this petition with a motion to dismiss for the reason that the court was without jurisdiction to hear the petition since no allegations of change of conditions were alleged that would authorize the court to change the custody of the two-year-old girl baby for four days and two nights out of the month. The motion was overruled. Upon the hearing, the first witness called by appellee's attorney was the mother of the child, Mrs. Eddins. In answer to the attorney for appellee, Mrs. Eddins testified and has not denied that appellee had been permitted to visit his child more than 15 times and had never been denied the privilege of visiting with the child except when he would call at unreasonable times.

The next witness called by the appellee's attorney was the appellee, and he testified:

"Q You have heard the testimony of your former wife, and you have heard her testify that there has been a conflict?

"A Yes.

"Q In your requesting and receiving visitation rights. Now, I want to direct your attention to the time that you got back here to Pampa, which I believe was sometime in July?

"A Yes, sir.

"Q And up to the date this suit was filed on August 2nd, will you relate to the Court briefly what you did in order to try to visit with your child, and with what results?

"A Well, there has been a conflict ever since the divorce, as far as—I wasn't in town too often; I travel quite a bit, and I just came through in spots, and I didn't stay long, and I would call, and it never was late at night, and I didn't ask to keep her for long, but I was refused quite often.

"Q Do you know how many times you called during that period of time to request visitation?

"A No.

"Q Okay. But suffice it to say you were refused permission on more than one occasion to visit with your child?

"A Yes.

"Q And that was at a time when you were just coming through town and had only a short time to stay?

"A Yes; several times.

"Q And you got back here in July?

"A It was the end of June, I believe.

"Q The end of June?

"A Somewhere around the end of June."

On cross-examination, appellee further testified:

"Q Haven't you told Elaine and her husband, Jack, that you felt like you ought to be able to see Leslie anytime you get damn good and ready? Isn't that the words you used?

"A When I was through town and I was only here for a short period, and they knew that—

"Q It didn't make any difference what time of day or night it was—

"A (Interrupting) I felt like she was my child and I feel I ought to be able to see her when I don't make unreasonable requests.

"Q When they didn't give her to you, didn't you threaten them with bodily harm?

"A I had words with Jack one afternoon."

The trial court granted the relief prayed for in appellee's petition and appellants have prosecuted this appeal.

■ As we view appellee's petition, it is just as much an application for the custody of the child as it would have been had he asked for the child for two weeks. There is no legal distinction when the custody is changed regardless of the length of time. Here we have a two-year-old girl baby carried away by an unmarried father who is on the go from Florida to Oklahoma and is not settled anywhere at the time. It is true that appellee's parents live in Pampa where he could carry the child. The grandparents have no right in this custody case and they are asserting none. However, it is without dispute that the mother of the child has permitted this child to visit in the home of appellee's father and mother. This child should be at home with its mother every night where her food and clothing will be provided as needed and its calls for "Mama" will be answered.

The appellee relies on the recent case of the Supreme Court in Leithold v. Plass, 413 S.W.2d 698, 699. This case was on appeal from the Dallas Court of Civil Appeals and the Dallas Court has again had before it a case almost on all-fours with this appeal and has held that the petition properly construed was an application for change of custody. Leaverton v. Leaverton, Tex.Civ.App., 417 S.W.2d 82. On Motion for Rehearing, the Dallas Court distinguishes the Leithold v. Plass case as follows:

"In his motion for rehearing appellee earnestly argues that we erred in holding that the trial court's order constituted a change in custody. Appellee cites us to the opinion of our Supreme Court in the recent case of Leithold v. Plass, 413 S.W.2d 698 (Tex.Sup.1967).

"We have carefully studied the opinion in the Leithold case and have concluded that our holding in the instant case is not contrary to or inconsistent with *Leithold*.

"In the case now before us appellee very carefully refrained from alleging or undertaking to prove that there had been any change of conditions since the entry of the original divorce decree. His position, as urged again in his motion for rehearing, is that such allegation and proof are unnecessary, since this is only a plea for a 'clarification of visitation rights.' In his motion appellee says, 'By implication, the Supreme Court holds that, in judging the validity of an order changing only visitation, it is unnecessary to plead and prove change of conditions.'

"We do not agree with appellee. The Supreme Court expressly declared:

'It is clear to us that the judgment of the trial court modified the Arizona decree with respect only to the visitation rights of petitioner and that custody of the child as awarded by the Arizona court was unaffected. There being evidence of a change of condi-

tions sufficient to support such order, we reverse the judgment of the court of civil appeals and affirm that of the trial court.'

"Just as it is practically impossible to draw an exact line marking the change from one color to another in a rainbow, so it is practically impossible to draw an exact line marking the change from visitation to a modification of custody in case involving children. Yet the time comes when the difference is apparent and must be recognized. In the instant case appellee suggested in his pleading and with his evidence sought a judgment giving him 'visitation' rights with his child in Texas in charge of her father for two months of each year—one sixth of the whole time—hundreds of miles from her custodial home in the State of Alabama. Though he did not succeed in obtaining all that he asked for he did obtain a decree giving him charge of the child in Texas for four weeks of each year—one-thirteenth of the whole time. In the *Leithold* case the father was granted only a two weeks' visitation period.

"In the *Leithold* case the court said, 'Custody of a child connotes the right to establish the child's domicile and *includes the elements of immediate and direct care and control of the child, together with provision for its needs.* * * * These rights inherent in a custody status are not held by one enjoying visitation rights as provided in the custody decree.' (Emphasis ours.) Applying the above principles we are still of the opinion that the case before us involves an attempted modification of custody, notwithstanding appellee's desire to label it merely 'clarification of visitation rights.'

"We think the *Leithold* case may be distinguished from the case now before us in other respects, but we shall not further extend this opinion.

"The motion for rehearing is overruled."

 The Supreme Court has denied a writ of error in this Dallas case. It is our opinion the trial court was without jurisdiction to grant the relief sought by appellee. Should we be mistaken in this holding, then the appellant raises the point that the great weight and preponderance of the evidence is against the judgment of the trial court and we sustain this assignment.

The judgment of the trial court is reversed and the cause is remanded.