# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-08-021-CV

JEFFREY I. RUBINETT                                        APPELLANT

V.

SHARON M. RUBINETT                                        APPELLEE

------------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

This appeal stems from the divorce of Appellant Jeffrey I. Rubinett and

Appellee Sharon M. Rubinett, parents of minor son Joshua. The parents were

named joint managing conservators (JMCs) of Joshua, but Sharon was awarded

the exclusive right to establish his primary residence as well as other exclusive

rights. In five issues, Jeffrey complains that the trial court abused its discretion

---

[1] *See* Tex. R. App. P. 47.4.

by awarding Sharon those exclusive rights, by ordering the visitation schedule set out in the decree, by awarding Sharon attorney's fees, and by requiring him to make accountings to Sharon for the Texas Tomorrow Fund account he set up with his separate property. Because we hold that the trial court did not abuse its discretion, we affirm the trial court's judgment.

In his first issue, Jeffrey contends that the trial court abused its discretion by appointing Sharon the JMC with the exclusive right to establish Joshua's primary residence because insufficient evidence supports that finding. In his second issue, Jeffrey challenges the trial court's orders giving Sharon the exclusive rights (1) to consent to medical, dental, and surgical treatment involving invasive procedures and to consent to psychiatric and psychological treatment of the child; (2) to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child; (3) to represent the child in legal action and to make other decisions of substantial legal significance concerning the child; (4) to consent to marriage and to enlistment in the armed forces of the United States; and (5) except as provided by section 264.0111 of the Texas Family Code, to receive the services and earnings of the child. He contends that the trial court's award of these rights to Sharon is not in Joshua's best interest, violates the public policy of the State of Texas as set out in the family code, is contrary to the parenting

plans submitted by the parties, and is unsupported by any pleadings of the parties.

Section 153.134 of the family code provides,

> (b) In rendering an order appointing joint managing conservators, the court shall:
>
> (1) designate the conservator who has the exclusive right to determine the primary residence of the child . . . ;
>
> (2) specify the rights and duties of each parent regarding the child's physical care, support, and education;
>
> (3) include provisions to minimize disruption of the child's education, daily routine, and association with friends; [and]
>
> (4) allocate between the parents, independently, jointly, or exclusively, all of the remaining rights and duties of a parent as provided by Chapter 151.[2]

The trial court has discretion to allocate the rights and duties of the parents in a suit affecting the parent-child relationship.[3] The trial court's judgment will not be disturbed on appeal unless there has been an abuse of discretion.[4] An abuse of discretion does not occur when the trial court bases

---

[2] *See* Tex. Fam. Code Ann. § 153.134(b) (Vernon 2008).

[3] *See Mize v. Mize*, No. 02-08-00163-CV, 2009 WL 279335, at * 5–6 (Tex. App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op.).

[4] *In re Marriage of Jeffries*, 144 S.W.3d 636, 638–39 (Tex. App.—Texarkana 2004, no pet.).

3

its decisions on conflicting evidence.[5] Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision.[6]

The child's best interest guides the determination of all conservatorship issues.[7] The trial court is in a better position than a reviewing court to determine what will be in the best interest of the child since it observed the parties and witnesses and their demeanor and had the opportunity to assess each parent's claims.[8]

Jeffrey contends that the trial court abused its discretion by naming Sharon as the JMC with the exclusive right to determine Joshua's domicile. The only evidence Jeffrey seems to base this contention on is that Sharon is a flight attendant who is away from home about twelve days a month while he, as a veterinarian who sets his own schedule in East Fort Worth, could be at home with Joshua every day.

---

[5] *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).

[6] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

[7] *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002).

[8] *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

The trial court heard evidence that Sharon had been employed by Delta Airlines for about twenty years, that her work schedule was Thursday through Saturday but was flexible, and that she and Jeffrey had designed their work schedules from the time she went back to work after Joshua's birth with his care in mind. Susan Goldstein, who performed the social study, testified that if one parent had to be designated as the parent with the exclusive right to determine Joshua's primary residence, she would choose Sharon because Sharon would encourage flexibility and encourage Joshua to have a relationship with his father.

In the divorce decree, the trial court awarded regular possession of Joshua to Jeffrey beginning at 5:00 p.m. on Wednesday and ending at 5:00 p.m. on Saturday; this time period encompasses Sharon's typical periods of time away from home due to her work. Based on the above, we cannot hold that the trial court abused its discretion by awarding Sharon the exclusive right to determine the primary residence of the child. We overrule Jeffrey's first issue.

Regarding the other rights awarded exclusively to Sharon, Sharon testified that Jeffrey had a tendency to self-medicate and that he had once performed invasive surgery on himself. Evidence from other witnesses supported Sharon's testimony that Jeffrey could be manipulative, controlling, and obsessive with

5

Joshua. Susan Goldstein testified that Jeffrey "inflated his own value in [the] child's life" and deflated Sharon's value. Sharon testified that Jeffrey belittled and disrespected her in front of Joshua and told their son that she was divorcing "them." There was also evidence that Jeffrey earned a higher income than Sharon. Further, we note that Jeffrey does not point to any specific evidence supporting his contention that the trial court's award of these exclusive rights to Sharon was not in Joshua's best interest.

Regarding Jeffrey's contention that Sharon's pleadings do not support the trial court's awarding her exclusive rights other than the rights to establish domicile and to receive and give receipt for child support, the trial court concluded in the supplemental conclusions of law, "The Trial Court's paramount concern is the best interest of the child, and the formalities of the procedural rules of pleading will not be used to defeat that interest." The Texas Supreme Court has held that "a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child. The courts are given wide discretion in such proceedings."[9] Similarly, our sister court has held that "[p]leadings are of little importance in

---

[9] *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967).

6

child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings."[10]  Therefore, it is of no legal consequence that Sharon did not plead or propose that she be given all the rights that she ultimately received.  We overrule Jeffrey's second issue.

In his third issue, Jeffrey contends that the visitation schedule is not in Joshua's best interest, denies Jeffrey quality time with his child, violates the public policy of this State, and is an abuse of discretion.  (He also reiterates his complaints that the trial court appointed Sharon as the JMC with the exclusive right to determine the child's primary residence, which we have already resolved against him.)  Jeffrey does not explain how the possession schedule, which is quite more favorable to him than the standard possession order is to parents not awarded the exclusive right to determine the child's primary residence, is not in Joshua's best interest or why the modified standard visitation order he proposes, which would give Joshua much less contact with his mother, would be in Joshua's best interest.  We hold that the trial court did not abuse its discretion by ordering a possession schedule that is very similar

---

[10] *In re B.M.*, 228 S.W.3d 462, 465 (Tex. App.—Dallas 2007, no pet.).

7

to the possession schedule utilized by the parties while the divorce was pending. We overrule Jeffrey's third issue.

In Jeffrey's fourth issue, he contends that the attorney's fee award to Sharon is not supported by the evidence and is an abuse of discretion. (He also reiterates his complaints about the trial court's giving Sharon exclusive rights that she did not request in her pleadings, which we have already resolved against him.) In contending that the trial court abused its discretion by awarding attorney's fees, Jeffrey focuses on the fact that he and Sharon had agreed on the division of the marital estate and argues that he should not be punished for litigating the issue of which parent should have the exclusive right to establish domicile.

A court may award attorney's fees in a divorce action as part of a just and right division of property.[11] Whether the award is reasonable is a fact issue, and the award must be supported by evidence.[12] An attorney's testimony alone can be sufficient evidence to support the award.[13]

---

[11] *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 208 (Tex. App.—El Paso 2003, no pet.).

[12] *Id.*

[13] *Peeples v. Peeples*, 562 S.W.2d 503, 506 (Tex. Civ. App.—San Antonio 1978, no writ).

The trial court's relevant findings provide:

28.  The Trial Court finds . . . the division of the marital estate to be a just and right division, based on the parties' representation at trial that they had reached an agreement regarding the division of the marital estate prior to trial.

29.  The Trial Court found that good cause exists to award [Sharon] a judgment in the amount of $7,500.00 for attorney's fees, expenses, and costs, with interest at 6% . . . per year compounded annually from the date this Final Decree of Divorce is signed until paid in full. The judgment, for which let execution issue, is awarded against [Jeffrey] and [Jeffrey] is ORDERED to pay to [Sharon] at her last known mailing or residential address the sum of $7,500.00, plus interest, representing attorney's fees, expenses, and costs, by cash, cashier's check, or money order on or before the date this Final Decree of Divorce is signed.

The stipulation announced on the record at the beginning of trial provided that each party would keep the property in his or her possession and any separate property would be confirmed as separate property; attorney's fees were not mentioned. As evidence of Sharon's attorney's fees, her lawyer testified during trial that she had been licensed since 2001; that her hourly rate was $275; that her paralegal's hourly rate was $120; that $10,000 in attorney's fees was requested, reasonable, and necessary; and that the fee requested represented several court appearances, drafting of pleadings and discovery, communications with the client and opposing counsel, and trial.

9

Jeffrey did not cross-examine Sharon's lawyer. We note that Jeffrey's lawyer also testified about his attorney's fees.

Based on the above, we hold that the award of attorney's fees is supported by the evidence and that the trial court did not abuse its discretion by awarding attorney's fees to Sharon. We overrule Jeffrey's fourth issue.

In his fifth issue, Jeffrey complains that the trial court abused its discretion by requiring that he make accountings to Sharon for the Texas Tomorrow Fund that he established with separate property. He contends that the order violates the public policy of the State of Texas, infringes on his right to use his separate property as he sees fit, and is not based on the pleadings.

The divorce decree provides,

> IT IS ORDERED that Jeffrey I. Rubinett shall provide all documentation, including but not limited to financial statements, regarding the Texas Tomorrow Fund established for the benefit of the child, Joshua Alan Rubinett, to Sharon Rubinett at her last known mailing address within 15 days of Jeffrey I. Rubinett's receipt of said documentation.

The divorce decree also provides both Jeffrey and Sharon with "the right to manage the estate of the child to the extent the estate has been created by the parent or the parent's family" and with "the right to receive information from any other conservator of the child concerning the health, education, and welfare of the child." For the reasons expressed above, we reject Jeffrey's argument

10

that the trial court abused its discretion by including an order not expressly contemplated by the pleadings.[14] We also fail to see how requiring Jeffrey to provide mere information about the status of the college fund he set up for Joshua to Joshua's mother infringes on Jeffrey's rights to manage his own separate property, affects Jeffrey's right to manage any interest Joshua has in the fund, violates public policy, or harms Jeffrey. We therefore overrule Jeffrey's fifth issue.

Having overruled all of Jeffrey's issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: May 14, 2009

---

[14] *See Leithold*, 413 S.W.2d at 701; *B.M.*, 228 S.W.3d at 465.

11