

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00381-CV

**IN THE INTEREST OF J.O.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-01006
Honorable Richard Garcia, Associate Judge Presiding

Opinion by:      Rebeca C. Martinez, Justice

Sitting:         Rebeca C. Martinez, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: December 11, 2019

REVERSED IN PART AND REMANDED

The trial court terminated parental rights to J.O and appointed the Texas Department of

Family and Protective Services as J.O.'s sole permanent managing conservator.[1] J.O.'s parents do

not appeal. In the termination order, the trial court ordered J.O. to remain placed in the home of

Elizabeth Escamilla-Rodriguez and Eduardo Rodriguez and ordered the Department "to proceed

to adoption in 40–90 days, unless appeal is filed." Appellant Wendy Langford is the adoptive

mother of J.O.'s half-brother. She intervened and now appeals the termination order as to J.O.'s

placement and adoption. Langford argues in three issues that the relief the associate judge ordered

(1) does not comport with the pleadings, (2) improperly limits the Department's managing

---

[1] To protect the identity of the minor child in this appeal, we refer to her by her initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

conservatorship, and (3) conflicts with the district judge's findings.[2] We sustain Langford's first and second issues and reverse the termination order as to adoption and the placement restrictions placed upon the Department as managing conservator. We affirm the termination order in all other respects and remand for further proceedings consistent with this opinion.

## BACKGROUND

On May 10, 2018, the Department filed an original petition for protection of a child, for conservatorship, and for termination of the parent-child relationship between J.O. and her parents. At the time, J.O. was three-days old. Prior to filing its petition, the Department had removed J.O. from her mother based upon allegations of the mother's drug use, limited prenatal care, and mental health disorders. J.O.'s father was unknown. The Department requested that it be appointed J.O.'s temporary managing conservator and that the Department be named J.O.'s permanent sole managing conservator if J.O. could not be reunified with either parent or permanently placed with a relative or other suitable person. The trial court ordered the Department to be named temporary sole managing conservator.

The Department's initial goal following removal was reunification of J.O. with her mother. To facilitate this result, the Department placed J.O., the day she was removed, with the Rodriguezes, who lived within 50-miles of J.O.'s mother in San Antonio. Beginning in May 2018, the Department's caseworker communicated with Langford, the adoptive mother of J.O.'s half-brother. In their conversations, Langford told the caseworker that she was interested in becoming a foster parent to J.O. In September 2018, Langford became licensed to be a foster parent, and,

---

[2] The Honorable Richard Garcia, Associate Judge, presided over a bench trial and signed the termination order. The parties waived de novo review by the district court to secure a trial setting before the associate judge. Langford's third issue concerns findings the district court judge made in a pre-trial order. We do not reach the third issue.

around that time, the Department changed its plan from reunification of J.O. with her mother to termination of the mother's parental rights.

In October 2018, the Department requested permission to move J.O. from her current placement with the Rodriguezes to placement with Langford. The associate judge denied the Department's request, and the Department requested a de novo hearing before the district court. On November 29, 2018, the day before the de novo hearing, the Rodriguezes filed a petition in intervention, in which they sought their appointment as sole managing conservators of J.O. or alternatively to adopt the child. The Rodriguezes also requested their appointment as temporary managing conservators of J.O. and that J.O. be placed with them for the duration of the suit.

Langford, Eduardo Rodriguez, and the Department's caseworker testified at the de novo hearing held on November 30, 2018. Langford testified that she wished to adopt J.O. if parental rights were terminated. She also testified that she was able and willing to foster J.O. for the duration of the suit at her home in Waller, Texas, which is approximately 180 miles from San Antonio. Eduardo Rodriguez testified that the Department told him that he and his wife had a good chance to adopt J.O. when J.O. was placed with them. He further testified that J.O. did not have special needs but was rehabilitating from a recent surgery to her tongue to address a risk of aspiration. The caseworker testified that the Rodriguezes were under the "Foster-to-Adopt Program." According to the caseworker, the Department did not treat foster parents in the program differently than other foster parents but used the program to indicate whether the foster parents were looking to adopt children. The caseworker testified that she advised the Rodriguezes not to become overly attached to J.O. because J.O. might be removed from their home.

After hearing the evidence, the trial court affirmed the associate judge's order to keep J.O. at her current placement with the Rodriguezes. The trial court also ordered J.O.'s placement into Langford's home for periodic visits. The trial court remarked that policies supported both

temporary placements. The Department's policy to keep a child within 50-miles of a parent before termination weighed in favor of placement with the Rodriguezes as too did the public policy to minimize placement changes. Because J.O. would continue therapy related to her surgery while with the Rodriguezes, this fact also weighed in the Rodriguezes' favor. The Department's policy to place siblings together and the respect owed the Department as sole temporary managing conservator weighed in favor of placement with Langford. Nevertheless, the trial court stated in no uncertain terms:

> [T]he Department is acting in good faith . . . . [A]t the end of this case, if the parental rights of the parents are terminated, the Department has to give written consent to an adoption. If they don't give you [the Rodriguezes] that written consent, you will never adopt this child.

The trial court also found that the Rodriguezes did not have standing to intervene.

On January 3, 2019, the trial court confirmed its oral pronouncements with a written ruling containing its findings. That same day, the trial court ordered that the Rodriguezes' petition in intervention be stricken. On January 28, 2019, Langford filed a petition in intervention.[3]

On May 1, 2019, the associate judge held a bench trial. The Department's investigator, the Department's caseworker, Langford, and J.O.'s mother testified; the Rodriguezes did not testify. The caseworker testified it was in J.O.'s best interest to be placed with Langford. Langford wished J.O. to be placed in her home and intended to adopt J.O. if parental rights were terminated. J.O.'s mother testified that she wished J.O. to be placed with J.O.'s half-brother if the mother's parental rights were terminated. At closing, J.O.'s attorney and guardian ad litem recommended termination of parental rights and that J.O. be placed with Langford. He stated: "I would like to [ac]knowledge that the Rodriguezes are wonderful foster parents, but it's a policy of the

---

[3] "Under Texas law, a third party is not required to secure the court's permission to intervene," but the petition is "subject to being stricken by the court for sufficient cause on the motion of any party." *State v. Naylor*, 466 S.W.3d 783, 788 (Tex. 2015) (orig. proceeding) (citations and brackets omitted); *see also* TEX. R. CIV. P. 60.

Department to keep kids together, and that this is the only way we can do it." The trial court took the case under advisement.

On May 16, 2019, the trial court signed an order terminating parental rights to J.O. and appointing the Department as her sole permanent managing conservator. The trial court entered the following findings:

> 6.1. [The] Court finds the child has been placed in a foster-to-adopt home, [the] Rodriguez[es'], since age 3 days old.
>
> 6.2. [The] Court is aware of CPS policy regarding placement of siblings.
>
> 6.3. [The] Court finds the evidence at this hearing indicates the proposed placement, Langford, is a very good placement.
>
> 6.4. [The] Court finds, at [a] prior hearing, the current foster-to-adopt home is also a very good placement, as acknowledged by [the] child's attorney at this hearing.
>
> 6.5. [The] Court finds the paramount guiding principal is the best interest of the child.
>
> 6.6. [The] Court finds the evidence presented at trial does not present evidence regarding [the] best interest of [the] child as regards to placement and permanency, but only presented as [a] policy decision.
>
> 6.7. [The] Court finds other siblings are in separate placements.
>
> 6.8. [The] Court finds the following orders are based on [the] best interest of the child.

The trial court ordered in a section titled "Further Orders":

> 11.1. [The] Child remains in [the] current foster-to-adopt home, and CPS is to proceed to permanency at [the] Rodriguez[es's] home.
>
> 11.2. [The] Court finds the best interest of the child is to remain in [the] Rodriguez[es'] foster-to-adopt home.
>
> 11.3. [The] Court orders sibling contact to be set up regularly with all 3 children, if possible, even though placed in 3 separate homes.[4]

---

[4] At trial, Langford testified that a third sibling lived with an adoptive mother in Austin and that Langford planned sibling visits among the three children.

11.4. Twenty days after judgement [sic] signed, CPS to process adoption in 40–90 days, unless appeal is filed.

Langford appeals these specific orders relating to placement and adoption. The Department supports placing J.O. with Langford and waived a response brief. The Rodriguezes, having been denied intervention, are not parties to this appeal and also did not file a brief. Although the Department waived its brief and the Rodriguezes did not file a brief, we must independently determine whether Langford's arguments are sound. *Cf. Haas v. Voigt*, 940 S.W.2d 198, 201 n.1 (Tex. App.—San Antonio 1996, writ denied) ("[P]arties cannot concede a question of law necessary to the proper disposition of a point of error.").

## DISCUSSION

Langford argues in her first issue that the trial court's order is void insofar as it orders the Department to proceed with permanency of J.O. at the Rodriguezes' home and orders the Department to process her adoption by the Rodriguezes because this relief was not pled or tried by consent. In her second issue, Langford argues the trial court had no authority to order that J.O. was to remain placed with the Rodriguezes or to order the Department to consent to J.O.'s adoption by the Rodriguezes because no limitation on the Department's sole managing conservatorship was requested by any party.[5]

### Standard of Review & Applicable Law

"Texas is a 'fair notice' state, which means that all parties are entitled to fair notice of a claim." *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied) (citations

---

[5] *See* TEX. FAM. CODE ANN. § 153.371 (specifying the rights and duties of a nonparent appointed as sole managing conservator). In her brief, Langford prays that we vacate the parts of the termination order "which relate to placement and adoption." Because Langford does not address the trial court's order as to sibling contact and does not pray that we vacate the order as to sibling contact, we do not address the issue or vacate that part of the order related to sibling contact. *See* TEX. R. APP. P. 38.1(i) (requiring an appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *id.* 38.1(j) (requiring an appellant's brief to contain a short conclusion that clearly states the nature of the relief sought).

omitted). "Ultimately, the purpose of pleadings is to give the adversary parties notice of each parties [sic] claims and defenses, as well as notice of the relief sought." *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). "All pleadings shall be construed so as to do substantial justice." TEX. R. CIV. P. 45. We do not give pleadings a "too cabined reading." *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354 (Tex. 1995). "To determine whether a claim was pled, we must determine whether the pleadings are adequate to state 'with reasonable certainty,' and without reference to outside information, 'the relief sought with sufficient information upon which to base a judgment.'" *In re G.M.*, No. 04-13-00689-CV, 2014 WL 1242662, at *3 (Tex. App.—San Antonio Mar. 26, 2014, no pet.) (mem. op.) (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979)). "Pleadings must at a minimum notify the opposing party of the claim involved." *Messier v. Messier*, 389 S.W.3d 904, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A judgment must conform to the pleadings. TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). "Because a party's pleading invokes the trial court's jurisdiction, an order or judgment not supported by the pleadings is void for lack of jurisdiction." *Rivera v. Figueroa*, No. 04-18-00256-CV, 2019 WL 691502, at *2 (Tex. App.—San Antonio Feb. 20, 2019, no pet.) (mem. op.); *accord In re G.M.*, 2014 WL 1242662, at *3. "If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* TEX. R. CIV. P. 67. "To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue." *In re G.M.*, 2014 WL 1242662, at *4. "An unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under

circumstances indicating both parties understood the issue was being contested." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *5 (Tex. App.—San Antonio Oct. 30, 2019, no pet. h.).

*Analysis*

At the time of trial, the only pleadings on file were the Department's original petition and Langford's petition in intervention. In its petition, the Department sought termination of parental rights and sought to be appointed as permanent sole managing conservator of J.O. if J.O. could not be reunified with either parent or permanently placed with a relative or other suitable person. In her petition in intervention, Langford sought only attorney's fees and "general relief." The trial court had struck the Rodriguezes' petition in intervention on the Department's motion.

At trial, the Department and Langford sought (1) termination of the parental rights of J.O.'s mother and the unknown father, (2) the Department's appointment as managing conservator, and (3) J.O.'s placement with Langford. Alternatively, the Department requested that Langford take nothing if the trial court decided not to place the child at that time. J.O.'s mother sought to maintain her parental rights, and, in the alternative, requested that J.O. be placed with Langford if the mother's parental rights were terminated. J.O.'s attorney and guardian ad litem recommended termination and that J.O. be placed with Langford. The Rodriguezes were not parties at the time of trial and were not discussed in trial testimony. No exhibits were admitted at trial. In the entire proceeding, only the attorney and guardian ad litem mentioned the Rodriguezes, when, at closing, he stated that the Rodriguezes "are wonderful foster parents" and that he had recently been to their home to visit J.O. The attorney and guardian ad litem stated that J.O. seemed happy and healthy on his recent visit and that Langford and the Rodriguezes communicated and had a good relationship.

On this record, the matter of J.O.'s adoption was not pled or tried by consent. The Department's petition raised only the issues of termination and conservatorship. While the

Rodriguezes attempted to intervene and raise the issue of adoption, the trial court struck their petition in intervention. Langford intervened, but did not raise the issue of J.O.'s adoption by either her or the Rodriguezes.[6]

The matter of permanency and adoption by the Rodriguezes was also not tried by consent. Because their intervention failed, the Rodriguezes were not parties at trial and did not present affirmative evidence relevant to the issue of adoption. Among other matters, the Rodriguezes did not present evidence to prove that the Department consented to their adoption or that there existed an exception to the requirement for consent. *See* TEX. FAM. CODE ANN. § 162.010(a) ("Unless the managing conservator is the petitioner, the written consent of a managing conservator to the adoption must be filed. The court may waive the requirement of consent by the managing conservator if the court finds that the consent is being refused or has been revoked without good cause."). Underscoring the fact that no evidence was presented at trial as to matters related to permanency or adoption by the Rodriguezes, the trial court referenced a previous hearing to support its finding that the Rodriguezes' home was a good placement. The termination order states:

> 6.4. [The] Court finds, *at [a] prior hearing*, the current foster-to-adopt home is . . .
> a very good placement, as acknowledged by [the] child's attorney at this hearing.

(emphasis added).[7]

In sum, the issue of permanency and J.O.'s adoption by the Rodriguezes was not pled or tried by consent. The pleadings did not notify Langford, the Department, or the attorney and

---

[6] Langford prayed for "general relief," but this general prayer cannot be used to "enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist." *Stoner*, 578 S.W.2d at 683 (holding that a prayer "for such other and further relief to which plaintiff (or cross-plaintiff, intervenor, etc.) may show himself entitled" did not enlarge a pleading to give a party fair notice that the trial court might award money damages where there was no mention in the pleading of money damages sustained and no specific prayer for money damages).

[7] This finding reveals that the trial court considered evidence that was not in the trial record. *See In re E.F.*, No. 04-18-00635-CV, 2019 WL 2194539, at *2 n.4 (Tex. App.—San Antonio May 22, 2019, no pet.) ("The only evidence that can support the trial court's [termination] order is that evidence admitted at trial.").

guardian ad litem of the Rodriguezes' claim for adoption, and the record does not show that Langford, the Department, or the attorney and guardian ad litem understood the issue of adoption was involved. Consequently, the record does not support the trial court's judgment ordering the Department to proceed to permanency at the Rodriguezes' home and to process adoption. *See* TEX. R. CIV. P. 301; *Rivera*, 2019 WL 691502, at *2; *cf. In re J.M.*, 352 S.W.3d 824, 828 (Tex. App.—San Antonio 2011, no pet.) (reversing parental termination order where the judgment was not supported by the pleadings after the Department abandoned its pleading for termination).

The analysis as to custody is slightly different than the analysis as to adoption because the Texas Supreme Court has long recognized that pleading standards may be relaxed on issues concerning the custody of children. *See In re M.G.N.*, 491 S.W.3d at 408 (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)). In *Leithold v. Plass*, a father sought modifications to a divorce decree with respect to the "custody and control" of his son. 413 S.W.2d at 701. The trial court modified the decree to allow the father to have visitation for two-weeks each year at the father's home out-of-state. *Id.* at 700. On appeal, the mother argued that the trial court's order, which modified visitation rights, did not conform to the pleadings, which sought modification as to custody only. *Id.* at 700–01. The supreme court held that the pleadings supported the lesser relief of modification to visitation rights, stating:

> [W]e are of the view that a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child. The courts are given wide discretion in such proceedings. Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children. . . . [O]nce the child is brought under its jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence.

*Id.* at 701 (citations omitted). We have applied this precedent to affirm custody judgments that depart from technical requests in pleadings. *See, e.g., In re M.G.N.*, 491 S.W.3d at 407–08

(applying *Leithold* to affirm a modification to a conservatorship order that awarded a mother the superior right to possession of her children at all times not specifically designated when neither party pled for this specific relief and both parties testified at trial as to possession of the children); *In re G.M.*, 2014 WL 1242662, at *3–4 (applying *Leithold* to affirm a judgment removing a grandmother as managing conservator where the Department pled for its appointment as sole managing conservator and the grandmother and the Department presented evidence relevant to the grandmother's conservatorship at trial).[8]

However, here, unlike in *Leithold* and cases relying upon it, no pleadings were filed or evidence adduced at trial that would give the Department, Langford, or the attorney and guardian ad litem fair notice of the custody restriction the trial court imposed. Unlike the father in *Leithold*, the Rodriguezes did not have any pleadings on file and did not adduce any evidence at trial to support J.O.'s placement in their home. *Cf. Leithold*, 413 S.W.2d at 701 (noting that the court of appeals recognized the record amply supported "a true visitation order" and that the mother did not challenge whether the trial court's modification order was against the weight and preponderance of the evidence). In fact, no party developed the record as to the Rodriguezes' custody of J.O. Thus, even considering the relaxed pleading standards as to custody described in *Leithold*, we hold the trial court's judgment ordering J.O.'s placement with the Rodriguezes is not supported by the pleadings and was not tried by consent. *See* TEX. R. CIV. P. 301; *Rivera*, 2019 WL 691502, at *2. We cannot say the parties had fair notice of the placement issue determined by the trial court; therefore, the order as to placement is void. *See* TEX. R. CIV. P. 301; *Rivera*,

---

[8] We continue to look to *Leithold* for guidance as current precedent, although one of our sister courts has questioned its continued force after the enactment of the Texas Family Code, which *Leithold* predated. *See Baltzer v. Medina*, 240 S.W.3d 469, 476 n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

2019 WL 691502, at *2; *In re M.G.N.*, 491 S.W.3d at 406; *see also Messier v. Messier*, 389 S.W.3d at 907 ("Pleadings must at a minimum notify the opposing party of the claim involved.").

**CONCLUSION**

We sustain Langford's first and second issues and hold that the trial court's judgment is not supported by the pleadings or tried by consent. We reverse the trial court's judgment insofar as it orders J.O. to remain in her placement with the Rodriguezes and insofar as it orders the Department to proceed to permanency at the Rodriguezes' home and process adoption. We remand the case for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice