# Supreme Court of Texas

No. 24-0840

D.V.,

*Petitioner*,

v.

Texas Department of Family and Protective Services,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued September 11, 2025**

JUSTICE YOUNG delivered the opinion of the Court.

Justice Hawkins did not participate in the decision.

The Department of Family and Protective Services' designated representative twice stated at trial that the department sought to restrict but not terminate a mother's parental rights. The department never repudiated that view by, for example, affirmatively telling the court that it *did* still seek termination. The trial court nonetheless rendered judgment terminating the mother's parental rights. She appealed, but the department defended the judgment and asserted that it had not

abandoned its request for termination. The court of appeals affirmed. We now reverse. In parental-termination cases, a court may not terminate parental rights in the face of an unequivocal and unrepudiated statement made by someone speaking on the department's behalf that withdraws termination as a requested form of relief.

**I**

As with all parental-termination cases, the story underlying this one is disheartening. Petitioner D.V.—whom we call Mother—has a history of violent behavior and drug use. After Mother reportedly assaulted her ex-boyfriend and one of her other two children, the department took custody of E.D., the child at issue in this case, and filed a petition to terminate both Mother's and Father's parental rights to him. The department apparently quickly changed its mind as to Father, who at the time of trial was the department's choice to be E.D.'s permanent sole managing conservator (which in essence means that Father, and only Father, would exercise typical parental authority). At trial, however, the department's live pleading still demanded termination as to *both* parents. No one regarded that formal demand for termination as representing the department's actual demand.

The trial court referred Mother's case to an associate judge, who conducted a bench trial over videoconference. During the trial's second day, the department's counsel elicited the following testimony from the caseworker, whom the department had designated as its representative:

> Q. . . . What is the Department's recommendation [to] the Court today?
>
> A. The Department is seeking to limit and restrict [Mother]'s rights, and give permanent managing

2

conservatorship of [E.D.] to [Father], and to limit [Mother]'s rights to parent non-conservator with no visitation and contact.

The direct examination proceeded without any suggestion that this assertion reflected anything other than the department's position as to either parent. On cross-examination, Mother's counsel followed up just to be sure:

> Q. And [the department] is not seeking to terminate [Mother]'s rights, but to ask the Court to name her as a parent non-conservator?
>
> A. Correct.

Later, a Court Appointed Special Advocate (CASA) volunteer testified, and the department asked the following:

> Q. . . . And what is CASA's recommendation to the Court for [E.D.]'s best interest?
>
> A. CASA believes it's in [E.D.]'s best interest for Mother's rights to be terminated and for there to be [joint managing conservatorship] with Dad and Grandpa, with Dad being the primary on that.

When Mother testified, she expressed her desire at least for visitation rights to be restored and "[i]deally" to regain custody of E.D. In response to a direct question, she stated that "I am asking the Court not to terminate my parental rights." No party objected to any of the quoted testimony from these witnesses.

The department made neither an opening statement nor a closing argument. In Mother's brief closing, her counsel "ask[ed] the Court not to terminate [Mother]'s rights." E.D.'s attorney ad litem closed by stating, "Your Honor, I think the Department has met its burden as far as termination . . . . However, if the Court is not inclined to terminate

3

[Mother]'s parental rights, then I would request the Court name her a non-possessory conservator." After the attorney ad litem finished, the trial court immediately announced the termination of Mother's parental rights and appointed Father as sole managing conservator. The judge later signed a final judgment to that effect.

Mother sought a de novo hearing in the referring court, which refused until the court of appeals reversed and remanded for that purpose. *See D.V. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-23-00098-CV, 2023 WL 4494802, at *4 (Tex. App.—Austin July 13, 2023, no pet.). Mother then advanced several grounds for avoiding termination. The only one she preserved for appellate review is that the "associate judge lacked the authority to terminate [Mother]'s constitutionally protected parental rights when the Department affirmatively abandoned its pleading for termination at trial." The district court adopted the associate judge's ruling.

The court of appeals affirmed. 716 S.W.3d 176, 179 (Tex. App.—Austin 2024). It agreed that parties may abandon a pleading "by a stipulation, such as an agreement or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Id.* at 178 (quoting *In re I.L.*, 580 S.W.3d 227, 245 (Tex. App.—San Antonio 2019, pet. dism'd)). According to the court, "[i]n interpreting stipulations, courts consider the language used 'and the surrounding circumstances, including the state of the pleadings, the allegations made therein, and the attitudes of the parties toward the issue.'" *Id.* (quoting *In re J.M.*, 352 S.W.3d 824, 827 (Tex. App.—San Antonio 2011, no pet.)). The court identified the case's larger "context" as including the termination recommendations from the CASA volunteer

and attorney ad litem; the presentation of evidence that would support termination; the request by Mother's counsel not to terminate; and the statements abandoning termination coming not from the department's counsel but its designated representative. *Id.* Accordingly, the court "agree[d] with" the department's contention that, given this "context," the statements expressly withdrawing termination as the department's requested relief did not have the effect of doing so. *Id.*

## II

The department describes and defends the court's approach as "properly consider[ing] the totality of the circumstances." Perhaps even routine tort or contract cases might require something more precise than "the totality of the circumstances" to assess whether previously requested relief or previously asserted affirmative defenses should be deemed abandoned at trial. Neither the court of appeals nor the parties cite decisions of this Court illuminating the question, which we reserve for a future case in which it may be dispositive. We need not decide it today because, even assuming that the court of appeals' approach accurately reflects proper practice in typical civil litigation, it is inadequate—or at least incomplete—for parental-termination cases. To be clear, if claims for relief against a tort or contract defendant would be deemed abandoned in a materially indistinguishable trial, then the same result would follow in this termination case. But the converse is not necessarily true because parental-termination cases stand apart from the rest of civil litigation in multiple important ways.

This point is reflected in nearly all of this Court's cases addressing parental termination. As future-Chief Justice Pope explained for the Court

5

nearly half a century ago, for example, "[a]ctions which break the ties between a parent and child can never be justified without the most solid and substantial reasons," and so "in an action which permanently sunders those ties," the "proceedings [should] be strictly scrutinized." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976) (internal quotation omitted). Likewise, "[t]his court has always recognized the strong presumption that the best interest of a minor is usually served by keeping custody in the natural parents." *Id.* After all, "[t]he natural right which exists between parents and their children is one of constitutional dimensions." *Id.* Like the U.S. Supreme Court, this Court has repeatedly recognized that a "parental rights termination proceeding encumbers a value 'far more precious than any property right' and is consequently governed by special rules." *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758 (1982)). Among them is the constitutional requirement, subsequently codified by statute, *see, e.g.*, Tex. Fam. Code § 161.001(b), that "the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights," *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The gravity of the rights at issue are of such importance that the government provides lawyers for parents, *see* Tex. Fam. Code § 107.013(a), which is otherwise practically unheard of in civil litigation. Parents also benefit from an otherwise-inapplicable elevated standard of appellate review. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019). Page after page could be filled with these and other powerful observations.

We do not talk in this way about ordinary civil litigation. Commercial, administrative, tax, probate, tort, and every other kind of

6

case is of course of great importance. Such cases must be conducted under the highest standards, with judgments following proceedings that scrupulously comply with constitutional and statutory requirements and that depend on proof by material evidence. Speaking of parental termination with particularly solemn language does not undermine or diminish the seriousness with which we take all other litigation. To the contrary, precisely *because* those cases are all so significant, our precedents attempt to convey using English words what is deeply and innately understood by all fit parents: that their right to guide and direct their children's upbringing, and simply to be with their children, is unique among all other claims in our civil legal system.

Unsurprisingly, therefore, we have also observed that "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children." *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967). In other words, while we obviously must hold all parties to the rules, the rationale supporting general civil procedures is not always portable to parental-termination cases in quite the same way as elsewhere. Accordingly, while civil procedure is central to this case, we do not view this case as primarily one asking a generic civil-procedure question but one that must be examined in the distinctive context of parental termination.

To begin with the generally applicable principles, we agree with the court of appeals that parties *can* abandon claims and that judgment may not be granted on such claims. *See* Tex. R. Civ. P. 301. Claims can be formally abandoned. *See id.* R. 165 ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact

7

entered of record, so as to show that the matters therein were not tried."). But a claim may also be abandoned by stipulation, so that "[w]hen parties stipulate that only certain questions will be tried, all others are thereby waived." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 887 (Tex. 2019). We therefore agree with the El Paso Court of Appeals that courts may not order termination when the department has stipulated that it is not seeking that relief. *In re Shaw*, 966 S.W.2d 174, 177 (Tex. App.—El Paso 1998, no pet.).

The question here, then, is simply whether the statements by the department's designated representative amount to the department's unequivocal abandonment of termination as a requested remedy. Those statements bear only one meaning: that "[t]he Department is seeking to *limit and restrict* [Mother]'s rights[] and give permanent managing conservatorship of [E.D.] to [Father], and to *limit* [*Mother*]'s *rights to parent non-conservator* with no visitation and contact." (Emphasis added.) That unambiguous assertion was elicited by counsel for *the department*, who asked the representative to share not her own personal views but those of *the department*. Counsel in no way sought to walk it back or to contradict it as inaccurately reflecting the department's position. But lest there be any doubt, Mother's counsel asked the representative to confirm that the department was "not seeking to terminate [Mother]'s rights, but to ask the Court to name her as a parent non-conservator." The representative responded, "Correct."

We disagree with the court of appeals, therefore, that the representative's statements cannot be "interpret[ed] . . . as an unequivocal abandonment of the Department's request for termination of Mother's

8

parental rights." 716 S.W.3d at 178. Her words convey no other possible meaning. All that remains, then, is whether something else *displaces* that meaning by attributing a different position to the department. The court of appeals, and the department's briefing in this Court, offer up several possibilities within "the surrounding circumstances" of the trial. *Id.* None of them, individually or collectively, overcomes the clearly expressed statements of abandonment.

First, the court of appeals observed that the CASA witness recommended termination and that the child's attorney ad litem "asserted that 'the Department had met its burden as far as termination.'" *Id.* But what matters is whether the department is seeking termination, not whether other parties think that, if it did, it would have met its burden to obtain that result. (And, notably, *Father's* live pleading did not request termination of Mother's rights.)

Second, and relatedly, the court of appeals observed that "[p]resenting evidence supporting termination of Mother's rights is inconsistent with abandoning the request for termination." *Id.* This argument would have greater force if the trial included evidence that supported *only* termination. Were that so, there would at least have been some cognitive dissonance. What is the point of putting on evidence relevant only to termination if the department does not seek termination? But no such cognitive dissonance arose here because the evidence equally supported the relief that the department's designated representative stated the department actually desired: "to limit [Mother]'s rights to parent non-conservator with no visitation and contact." Regardless, even if some actions at trial could be seen as in some way inconsistent with an express

9

and unequivocal statement that parental termination was not being sought, they could not overcome the clear statement given the important interests at stake.

Third, the court of appeals and the department emphasize that Mother's own counsel asked the trial court during closing arguments *not* to terminate her parental rights. *See id.* Why would he do that, the argument goes, if that remedy was already off the table? One obvious possibility is that the request not to terminate was predicated at least in part on the very fact that termination was not legally authorized in light of the department's abandonment. True, it would have been better had the closing argument expressly linked the two points in that way, but it would be bizarre to restore termination as an option merely because Mother's counsel advised the trial court to limit itself to remedies that the department had not abandoned. By contrast, had the department at any point stated that termination was still on the table, Mother's closing could more easily be read to respond to that request.

Fourth, the court of appeals and the department assert that there was no abandonment here because it was the department's designated representative rather than its counsel who stated the department's position. True, in some other cases cited by the court of appeals, *see id.*, it was counsel who abandoned termination. But it hardly follows that *only* statements by counsel could have that effect. Without otherwise commenting on its decision, we agree with the Fort Worth Court of Appeals that a private provider who contracted with the department and who testified that the department was not seeking termination as to one of the children involved in the suit "effectively served as the Department's

10

agen[t]," at least for that purpose. *In re N.H.*, No. 02-22-00157-CV, 2022 WL 4374638, at *7 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.) (internal quotation omitted). This case is even clearer. The point of formally designating the representative, as the department did, *see* Tex. R. Civ. P. 267(a); Tex. R. Evid. 614, was to allow it, a nonnatural party, to have a human who could serve as its face and physical presence at trial, *see* Tex. R. Civ. P. 267(b). As the designated representative, she could express the department's positions in this case.

But even if participation by counsel in the abandonment was necessary, it was amply supplied here. It was the department's counsel who asked the designated representative what the department's view was—and then, upon hearing the answer, failed to take any steps to countermand it. To be clear, we express no view as to whether or when a designated representative can "bind" the department or any other agency in some formal sense or in other contexts. We confine today's analysis to parental-termination cases, where the presumptions have always disfavored termination. *See Legate v. Legate*, 28 S.W. 281, 282 (Tex. 1894) ("[T]he law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents . . . ."). If the department's position about termination differs from its designated representative's unequivocal assertion, then counsel must alert the court and the parent to the real position to avoid being bound.

Finally, the department attempts to defend the court of appeals' judgment by emphasizing that the live pleading continued to request termination. This point is unpersuasive because, without that pleading, there would be nothing to abandon. Perhaps more importantly, the point

11

proves too much. The live pleading also requested termination of *Father's* rights, even though the department openly advocated that Father be given full authority over E.D. In other words, it is hard to give much weight to what the live pleading says about termination when *in this very case* the live pleading demanded a termination that the department had undisputedly abandoned. The idea that it could also abandon the second request for termination is no huge leap.

A pleading that requests termination serves numerous purposes, perhaps most fundamentally by putting parents on notice of the grave results that could occur if they do not remedy the deficiencies the department has alleged. *Cf. In re A.L.R.*, 646 S.W.3d 833, 838 (Tex. 2022) (holding that a service plan describing court-ordered requirements as "requested tasks" did "not alert the parent to the mandatory nature of specific criteria" and could not support termination). It also triggers certain protections for the parents, such as the right to appointed counsel. *See* Tex. Fam. Code § 107.013(a). But the flip side of that coin is that when termination is no longer appropriate in a given case, we must expect the department to acknowledge as much. Because termination is always the last resort, it is to be hoped that the department can abandon a request for termination in many cases. Abandonment of that dire remedy should not be met with skepticism, as if the department could not *really* mean that it thought a lesser result might now be warranted. In turn, if the department did not truly intend to abandon its termination claim as to Mother, and not just Father, the need to contradict the designated representative's unequivocal contrary assertion could not be more urgent.

12

The department easily could have done so. Counsel could have immediately addressed the statement with the representative, or reasserted its cause of action to the court, or presented the caseworker the opportunity to correct her testimony on redirect examination if counsel somehow realized the supposed error only once it was reiterated on cross-examination. The department could have made a closing argument, emphasizing for the court and all parties that it sought termination. It undertook none of these steps and in no other way sought to convey that the live pleadings still reflected the department's position.

We hold that an unequivocal assertion by the department—including its designated representative—that it does not seek termination constitutes withdrawal of a request for that relief unless clearly repudiated. Best practice would, of course, entail preparation for trial such that a statement that does not reflect the department's view would not be made in the first place. But mistakes happen. If they do, rapid correction of a misstated departmental position is indispensable, given the gravity of the proceedings. If the State of Texas intends to eliminate parental rights through judicial process, a statement asserting the contrary should be a blaring klaxon alerting the department to the need for instant correction. But because there was *no* effort at correction here, we need not decide precisely what kind of repudiation is sufficient or just how soon it must come.

The department did not correct the clear, unequivocal, and unambiguous statement of intent to abandon its claim for termination, so we take it at its word as expressed at trial that it no longer sought to terminate Mother's parental rights with respect to E.D.

13

* * *

The judgment of the court of appeals is reversed. The portion of the trial court's judgment terminating Mother's parental rights is likewise reversed. Mother's petition to this Court prays that we "render[] judgment that [she] be appointed parent nonconservator (or alternatively, parent non-possessory conservator)." This outcome is precisely what the designated representative told the trial court that the department sought, and to that extent we render judgment accordingly. The case is remanded to the district court to render a judgment that is consistent with our decision and that resolves any remaining issues. The district court may, if necessary, conduct further proceedings to aid in the rendition of this judgment.

Evan A. Young
Justice

**OPINION DELIVERED:** October 31, 2025

14